*Carmelo Reyes Morales, et al. v. Bryant Concrete Construction, Inc., et al.*, Nos. 488 and 549, Sept. Terms, 2023 and 2024. Opinion by Tang, J.

**LABOR AND EMPLOYMENT – WAGES AND HOURS – MINIMUM WAGES AND OVERTIME PAY – ACTIONS – TRIAL - QUESTIONS OF LAW OR FACT – IN GENERAL**

The federal Fair Labor Standards Act ("FLSA"), the Maryland Wage and Hour Law ("MWHL"), and the Maryland Wage Payment and Collection Law ("MWPCL") allow an employee to bring an action against his or her "employer," which includes not just entities but also individuals who may be personally liable for violations under these statutes. To determine whether an individual qualifies as an employer, both Maryland and federal courts apply the "economic reality test." The economic reality test examines four factors to determine an individual's level of 'control' over an employee. The factors are whether the individual (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records. The factors are not to be applied mechanistically, and their general purpose must be understood as ultimately assigning responsibility under the law.

The trial court erred in granting judgment in favor of the co-owner of a company on the basis that there was no evidence upon which a jury could find that she was an "employer." The evidence established that this individual was a 51% owner and vice president of the company. She ran the office and had the authority to hire and fire employees, set their pay rates, and establish conditions of employment. She participated in the hiring process by setting up payroll for new employees and managed payroll for the company. She was responsible for entering the employees' hours daily and distributing paychecks. She also maintained the employees' employment records, including personnel and payroll records. Based on all this, there was legally sufficient evidence to generate a jury question that some factors of the economic reality test were met, upon which the jury could have concluded that the co-owner was an "employer" based on the totality of the circumstances.

**LABOR AND EMPLOYMENT – WAGES AND HOURS – MINIMUM WAGES AND OVERTIME PAY – ACTIONS – DAMAGES AND AMOUNT OF RECOVERY - LIQUIDATED DAMAGES – GOOD FAITH; REASONABLE GROUNDS**

Both the FLSA and the MWHL require an employer to pay an overtime wage of at least 1.5 times the employee's usual hourly wage for each hour worked over 40 in a workweek. Both statutes allow an employee to bring an action against the employer to recover unpaid overtime wages and enhanced damages in the form of liquidated damages.

The liquidated damages provision under the MWHL, which was modeled from the liquidated damages provision under the FLSA, gives the court the discretion to reduce or eliminate the liquidated damages award only if the employer "shows to the satisfaction of the court" that the employer acted in "good faith" and "reasonably believed" that the wages paid were not less than what was required by law. An employer's good faith and reasonable grounds for believing it had not violated the FLSA and the MWHL are each measured objectively.

The good faith defense requires an employer to take serious and informed steps to adhere to the applicable law. One way to satisfy the good faith showing is for the employer to prove that it sought out and adhered to legal advice regarding compliance with the wage statute. In contrast, delegating payroll functions to a third-party or a subordinate does not establish good faith to meet the FLSA's requirements. Likewise, neither simple conformity with industry-wide practice, nor the absence of employee complaints, is sufficient to meet an employer's burden.

Liquidated damages under the FLSA and MWHL are determined by the judge rather than a jury.

## LABOR AND EMPLOYMENT – WAGES AND HOURS – MINIMUM WAGES AND OVERTIME PAY – ACTIONS

An affirmative defense is one which directly or implicitly concedes the basic position of the opposing party, but which asserts that, notwithstanding that concession, the opponent is not entitled to prevail because he is precluded for some other reason. The good faith defense to a claim for liquidated damages under the FLSA and the MWHL is an affirmative defense. If successful, such a defense would entirely defeat an employee's claim for liquidated damages.

The good faith defense is not one of the enumerated defenses required to be pled under Maryland Rule 2-323(g). Moreover, neither the FLSA nor MWHL requires that this defense be specifically pled in an answer. Therefore, the defendants were permitted, but were not required, to plead the affirmative defense of good faith separately. Their failure to do so does not constitute waiver of the defense.

Circuit Court for Baltimore County
Case No. C-03-CV-19-004951

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

Nos. 488 and 549

September Terms, 2023 and 2024
_____

CARMELO REYES MORALES, ET AL.

v.

BRYANT CONCRETE CONSTRUCTION,
INC., ET AL.
_____

Arthur,
Tang,
Harrell, Glenn T., Jr.
   (Senior Judge, Specially Assigned),

JJ.
_____

Opinion by Tang, J.
_____

Filed: January 28, 2026

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

This appeal arises from a complaint for unpaid overtime wages. Carmelo Reyes Morales, Demetrio Perez Rodriguez, Oscar Perez Lopez (a.k.a. Oscar Perez Robles), and Alberto Dominguez Luna (collectively, the "Employees") were formerly employed by Bryant Concrete Construction, Inc. (the "Company"). The Employees filed a complaint in the Circuit Court for Baltimore County against the Company and its owners, Kyrone Bryant ("Kyrone") and Subrena Bryant ("Subrena").[1] They asserted claims for unpaid overtime wages under the Fair Labor Standards Act ("FLSA"), Maryland Wage and Hour Law ("MWHL"), and the Maryland Wage Payment and Collection Law ("MWPCL").

During the jury trial, the court granted judgment in Subrena's favor. The jury then returned a verdict in the Employees' favor against the Company, awarding them compensation for unpaid overtime. However, the jury declined to award the Employees enhanced damages under the MWPCL. Following this, the Employees asked the court to award them liquidated damages under the FLSA and MWHL, but the court denied this request. Additionally, the Employees sought attorneys' fees and costs under the FLSA and MWHL. The court awarded the Employees a portion of the requested attorneys' fees.

On appeal, the Employees present five questions, which we have condensed and rephrased as follows:[2]

---

[1] Because the owners share the same surname, we refer to them by their first names for clarity, with no disrespect intended.

[2] In the brief, the Employees' questions presented read:

1. Did the Circuit Court err in granting Appellees' motion for judgment as to Subrena Bryant?

1. Did the court err in granting the motion for judgment in favor of Subrena?

2. Did the court err in denying the Employees' request for liquidated damages under the FLSA and MWHL?

3. Did the court err in its award of attorneys' fees and costs under the FLSA and MWHL?

We answer "Yes" to the first question. Accordingly, we shall vacate the judgments of the circuit court and remand the case for further proceedings. We shall address the second question presented for guidance on remand. Because of the disposition of the first question, we do not reach the issue of attorneys' fees and costs. *See Qun Lin v. Cruz*, 247 Md. App. 606, 615 (2020) (declining to reach the issue of fees).

## I.

## OVERVIEW OF RELEVANT WAGE LAWS

To fully comprehend the background and procedural history of this case, it is helpful to understand the relevant statutory schemes and how they relate to one another. Therefore, we begin by summarizing pertinent federal and state wage laws.

---

2. Did the Circuit Court err in denying Appellants' motion for liquidated damages under the FLSA and MWHL?

3. Did the Circuit Court err in holding that paralegal time is not compensable as part of an attorney's fee award?

4. Did the Circuit Court err in failing to make an award of litigation costs to Appellants?

5. Did the Circuit Court abuse its discretion in awarding less than eight percent of the attorneys' fees accrued in connection with Appellants' successful claims?

2

## A.

## Federal Fair Labor Standards Act of 1938 (FLSA)

In 1938, Congress enacted the FLSA, which establishes minimum wage standards and protections for overtime compensation, among other provisions. *See* 29 U.S.C. §§ 201–219. "[T]he purpose behind the FLSA is to establish a national floor under which wage protections cannot drop[.]" *Martinez v. Amazon.com Servs. LLC*, 491 Md. 38, 48 (2025) (citation omitted).

With respect to overtime, the FLSA requires an employer to pay "not less than one and one-half times the regular rate" for time worked over 40 hours in a workweek. 29 U.S.C. § 207(a)(1). An employer who violates this requirement "*shall* be liable to the employee or employees affected in the amount of their . . . unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." *Id.* § 216(b) (emphasis added). In addition to any judgment awarded to the employee, "[t]he court . . . *shall* . . . allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." *Id.* (emphasis added).

Liquidated damages "are considered compensatory rather than punitive in nature," and constitute "compensation for the retention of a workman's pay which might result in damages too obscure and difficult of proof for estimate other than by liquidated damages." *Roy v. Cnty. of Lexington*, 141 F.3d 533, 548 (4th Cir. 1998) (citations omitted).

An award of liquidated damages equal to the unpaid overtime compensation is mandatory. *Perez v. Mountaire Farms, Inc*., 650 F.3d 350, 375 (4th Cir. 2011); *see Rogers v. Savs. First Mortg., LLC*, 362 F. Supp. 2d 624, 637 (D. Md. 2005) ("Under the FLSA,

3

there is a presumption in favor of liquidated damages against employers who violate the statute."). However, under 29 U.S.C. § 260:

> [I]f the employer shows to the satisfaction of the court that the act or omission giving rise to such action was *in good faith and that he had reasonable grounds* for believing that his act or omission was not a violation of the [FLSA], the court *may, in its sound discretion*, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title.

29 U.S.C. § 260 (emphases added). To simplify, we will refer to the provisions that outline an employer's defense against liquidated damages as the "good faith defense" or "good faith provision." In Part III.B.2 of this opinion, we summarize how federal courts interpret and apply the good faith provision.

"[T]he decision to reduce or eliminate an award of liquidated damages is a judge, not a jury, determination." *Randolph v. PowerComm Constr. Inc.*, 309 F.R.D. 349, 365 (D. Md. 2015); *accord Fowler v. Land Mgmt. Groupe, Inc.*, 978 F.2d 158, 163 (4th Cir. 1992) ("[E]xplicit language of section 260[] expressly vest[s] discretion to award liquidated damages in the hands of the trial judge.").

**B.**

**Maryland Wage Laws**

In 1965 and 1966, respectively, the General Assembly enacted the Maryland Wage and Hour Law ("MWHL") and the Maryland Wage Payment and Collection Law ("MWPCL"). *Martinez*, 491 Md. at 54. The MWHL is codified under Md. Code Ann., Labor & Employment ("LE") §§ 3-401 through -431, and the MWPCL is codified under LE §§ 3-501 through -509.

4

The MWHL establishes employers' obligations to pay a minimum wage and overtime pay, among other things, while the MWPCL governs the timing of wage payments and employers' obligations to pay wages upon termination. *Martinez*, 491 Md. at 54; *compare* LE §§ 3-413, 3-415, *with* LE §§ 3-502, 3-505. Read together, the MWHL and the MWPCL provide two avenues for employees to recover unlawfully withheld wages from their employers. *Peters v. Early Healthcare Giver, Inc.*, 439 Md. 646, 652–53 (2014); *see id.* at 654 (explaining that the MWPCL not only allows an employee to bring an action for violations of time but also for unlawfully withheld overtime wages; reaffirming that the MWPCL and the MWHL are "vehicles for recovering overtime wages").

## 1. Maryland Wage and Hour Law (MWHL)

The MWHL is the state equivalent of the FLSA. *Newell v. Runnels*, 407 Md. 578, 649 (2009). Because "[t]he requirements under the MWHL mirror those of the [FLSA]," a claim under the MWHL "stands or falls on the success of [a plaintiff's] claim under the FLSA." *Turner v. Hum. Genome Sci., Inc.*, 292 F. Supp. 2d 738, 744 (D. Md. 2003).

In relevant part, both the FLSA and the MWHL require an employer to pay an overtime wage of at least 1.5 times the employee's usual hourly wage for each hour worked over 40 in a workweek. *See* 29 U.S.C. § 207; LE § 3-415(a) ("Except as otherwise provided in this section, each employer shall pay an overtime wage of at least 1.5 times the usual hourly wage . . . .").

5

Similar to the FLSA, the MWHL allows an employee to bring an action against the employer to recover unpaid wages, liquidated damages, and reasonable counsel fees and other costs:

> If an employer pays an employee less than the wage required under this subtitle, the employee may bring an action against the employer to recover:
>
>> (1) the difference between the wage paid to the employee and the wage required under this subtitle;
>>
>> (2) an additional amount equal to the difference between the wage paid to the employee and the wage required under this subtitle as liquidated damages; and
>>
>> (3) counsel fees and other costs.

LE § 3-427(a).

Like the FLSA, the MWHL provides for a mandatory award of liquidated damages and includes a good faith provision. A court has discretion to reduce or eliminate the liquidated damages award under the MWHL only if the employer "shows to the satisfaction of the court" that the employer acted in "good faith" and "reasonably believed" that the wages paid were not less than what was required by law:

> (d)(1) If a court determines that an employee is entitled to recovery in an action under this section, the court *shall* award to the employee:
>
>> (i) the difference between the wage paid to the employee and the wage required under this subtitle;
>>
>> (ii) *except as provided in paragraph (2)* of this subsection, an additional amount equal to the difference between the wage paid to the employee and the wage required under this subtitle as liquidated damages; and
>>
>> (iii) reasonable counsel fees and other costs.
>
> (2) If an employer shows to the satisfaction of the court that *the employer acted in good faith and reasonably believed* that the wages paid to the

6

employee were not less than the wage required under this subtitle, the court shall:

    (i) determine that liquidated damages should not be awarded; or

    (ii) award, as liquidated damages, any amount less than the amount specified in paragraph (1)(ii) of this subsection.

LE § 3-427(d) (emphases added).

We have no difficulty holding that liquidated damages under the MWHL are determined by the judge rather than a jury, as is the case under the FLSA. The provisions for liquidated damages and good faith under the MWHL went into effect on July 1, 2014. *See* 2014 Md. Laws Ch. 262 (H.B. 295). Prior to this date, these provisions were not included under the MWHL. *See id.* The legislative history confirms that the legislature regarded the liquidated damages and good faith provisions under the MWHL as "additional remedies [that] mirror remedies that exist under the FLSA." H.B. 295, Comm. Recommendation, App'x-Questions & Answers at p. 20 (Apr. 6, 2014). Given the substantial textual similarities between the FLSA and the MWHL, Maryland appellate courts have looked to the FLSA, and to federal courts' interpretations of the FLSA, in interpreting the MWHL. *Martinez*, 491 Md. at 64 n.7.

Moreover, the Supreme Court of Maryland's discussion in *Admiral Mortgage, Inc. v. Cooper*, 357 Md. 533 (2000), supports our holding that liquidated damages under the MWHL are determined by the judge rather than a jury. There, the Court examined the distinction between statutes that allow additional damages through an "automatic" multiplier and those that provide for a discretionary amount. *Id.* at 548–49. The Court explained that a statute requiring an increase in compensatory damages by a specified

7

factor, such as doubling, is left to the judge to apply after the fact-finder (i.e., the jury) determines the compensatory damages. *Id.* at 548. On the other hand, a statute that permits—rather than requires—additional damages when a predicate fact is established, contemplates a discretionary determination of damages that is "quintessentially a matter for the trier of fact." *Id.* at 549–50 (explaining that the MWPCL, discussed in the next section, provides for a discretionary award of treble damages that is reserved for the jury to decide).

Under the MWHL, if the fact-finder (i.e., the jury) awards the employee compensatory damages for unpaid overtime wages, the court is *required* to award ("shall award") liquidated damages in a specified amount equal to "the difference between the wage paid to the employee and the wage required under this subtitle." LE § 3-427(d)(1)(ii). It is only when the employer establishes a good faith defense that the liquidated damages may be reduced or denied. LE § 3-427(d)(2). Therefore, like the FLSA, the determination of liquidated damages under the MWHL is made by the judge, rather than a jury.

## 2. Maryland Wage Payment and Collection Law (MWPCL)

As mentioned, the MWPCL allows an employee to bring an action against the employer for unpaid wages in violation of the statute. *See* LE § 3-507.2(a) (providing that "if an employer fails to pay an employee" as required under the subtitle "after 2 weeks have elapsed from the date on which the employer is required to have paid the wages, the employee may bring an action against the employer to recover the unpaid wages").

8

The MWPCL allows for the discretionary award of treble damages and reasonable counsel fees and other costs as follows:

> If . . . a court finds that an employer withheld the wage of an employee in violation of this subtitle and not as a result *of a bona fide dispute*, the court *may* award the employee an amount not exceeding 3 times the wage, and reasonable counsel fees and other costs.

LE § 3-507.2(b) (emphases added).[3]

The trier of fact is required to make the threshold determination regarding a bona fide dispute before proceeding to the question of enhanced damages. *Peters*, 439 Md. at 656. A bona fide dispute is "a legitimate dispute over the validity of a claim or the amount that is owing where the employer has a good faith basis for refusing an employee's claim for unpaid wages." *Id.* at 657 (citation modified). "The inquiry into whether an employer's withholding of wages was the result of a bona fide dispute is one concerned with the employer's actual, subjective belief that the party's position is objectively and reasonably justified." *Id.* (citation modified). "The question, simply, is whether there was sufficient evidence . . . to permit a trier of fact to determine that [the employer] did not act in good faith when it refused to pay" the wages due.[4] *Admiral*, 357 Md. at 543.

---

[3] In 2010, this section was redesignated as § 3-507.2. *See* 2010 Md. Laws. Ch. 151 (H.B. 404). Prior to the 2010 redesignation, this section was known as § 3-507.1. *Id.*

[4] "Bona fide dispute" under the MWPCL and the good faith defense under the FLSA and MWHL are different concepts, though the standards somewhat overlap. *See, e.g.*, *Pinnacle Grp., LLC v. Kelly*, 235 Md. App. 436, 466–67 (2018) (relying on *Roy v. County of Lexington*, 141 F.3d 533 (4th Cir. 1998), which discusses the good faith defense under the FLSA, as helpful guidance for assessing the existence of a bona fide dispute under the MWPCL); *see also id.* at 467–68 (citing *McFeeley v. Jackson St. Ent., LLC*, 825 F.3d 235, 245 (4th Cir. 2016), a FLSA case that notes that, if an employer's mere assumption could

Unlike the FLSA and MWHL, enhanced damages under the MWPCL are discretionary. Thus, notwithstanding the language that "the court" may award treble damages, the Supreme Court of Maryland has interpreted the language to mean that the decision to award such damages is left to the trier of fact, i.e., the jury. *Admiral*, 357 Md. at 550–51; *Balt. Harbor Charters, Ltd. v. Ayd*, 365 Md. 366, 396 (2001) (noting that the existence of a bona fide dispute under the MWPCL is a question of fact left for resolution by the jury, not the judge). Based on the language of the MWPCL, the trier of fact has the discretion to decline any award of enhanced damages, notwithstanding a finding that there was no bona fide dispute. *Peters*, 439 Md. at 661.

Reasonable counsel fees and costs under the MWPCL may be permitted only if the fact-finder determines that the employer's failure to pay wages in violation of the wage law was not the result of a bona fide dispute. *See Friolo v. Frankel*, 373 Md. 501, 518 (2003) (explaining that fees and costs are allowed "only in those situations where the employer acted wil[l]fully—in the absence of a bona fide dispute"); *Programmers' Consortium, Inc. v. Clark*, 409 Md. 548, 564 (2009) (holding that a judge could not award attorneys' fees to the employee when the jury had decided that there was a bona fide dispute about the wages due). This contrasts with the FLSA and MWHL, in which fees and costs are mandatory. *See Guillen v. Armour Home Improvement, Inc.*, Civ. No. DLB-19-2317, 2023 WL 3819295, at \*18 (D. Md. Jun. 5, 2023) ("Reasonable attorneys' fees

---

constitute good faith, then no employer would actively try to comply with employment standards).

and costs are mandatory under the FLSA and MWHL, and the MWPCL permits an award of attorneys' fees and costs when wage violations are not the result of a bona fide dispute.").

As with the FLSA and MWHL, the judge determines the award of reasonable counsel fees and other costs under the MWPCL. *See Admiral*, 357 Md. at 553; *Friolo*, 373 Md. at 518 (explaining that when a finding of no bona fide dispute is made under the MWPCL or when recovery is allowed under the MWHL, "courts should exercise their discretion liberally in favor of awarding a reasonable fee, unless the circumstances of the particular case indicate some good reason why a fee award is inappropriate in that case").

## C.

### Different Remedies, But Only One Recovery

To illustrate the application and interaction of federal and Maryland wage-and-hour laws, we describe two scenarios that show how an employee could recover damages under the FLSA, MWHL, and MWPCL.

If a jury determines that the employer violated wage laws by failing to pay the employee overtime, and that this failure *was not* the result of a bona fide dispute, the jury "may" award damages under the MWPCL, which can be, in total, up to three times the amount of unpaid wages. LE § 3-507.2(b) ("[T]he court may award the employee an amount not exceeding 3 times the wage . . . ."). Additionally, the judge "may" award reasonable counsel fees and other costs. *Id.*

Under both the FLSA and the MWHL, the employee would be awarded the unpaid overtime compensation. In addition to compensatory damages, the judge "shall" award

11

liquidated damages equal to the unpaid wages, *unless* the employer successfully establishes a good faith defense, in which case the judge has the discretion to eliminate or reduce the liquidated damages. In addition to compensatory damages and potential liquidated damages, the judge "shall" award reasonable attorney's fees and costs under the FLSA and the MWHL. *See* 29 U.S.C. § 216(b); LE § 3-427(d)(1), (2).

Consider the same scenario, except that the jury determines that the employer's failure to pay *was* the result of a bona fide dispute. While the jury might award the employee the unpaid overtime compensation, the jury *may not* award enhanced damages under the MWPCL. LE § 3-507.2(b). Furthermore, a judge *may not* award attorney's fees and costs under the MWPCL. *Id.* Despite the jury's inability to award enhanced damages under the MWPCL, the judge is still required to award the employee liquidated damages under the FLSA and the MWHL, *unless* the employer can successfully prove the good faith defense. Additionally, under the FLSA and the MWHL, the judge must award reasonable attorneys' fees and costs (subject to the limitations outlined in *Friolo*, *supra*). *See* 29 U.S.C. § 216(b); LE § 3-427(d). These examples illustrate that in both scenarios, an employee can recover unpaid overtime compensation. Importantly, the employee can also recover enhanced damages (liquidated damages), attorney's fees, and costs under the FLSA and MWHL, even if the employee is denied these remedies under the MWPCL.

Although an employee may pursue various remedies under federal and Maryland wage-and-hour laws, the employee may recover only once for all damages resulting from established wage violations. *See Gen. Tel. Co. of the Nw., Inc. v. Equal Emp. Opportunity Comm'n*, 446 U.S. 318, 333 (1980) (explaining that it "goes without saying that the courts

12

can and should preclude double recovery by an individual"); *Guillen*, 2023 WL 3819295, at \*16 (explaining, in the context of the federal and Maryland wage laws, that "a party may not recover twice for one injury, even if the party asserts multiple, consistent theories of recovery" (citation omitted)); *Butler v. DirectSAT USA, LLC*, 55 F. Supp. 3d 793, 818 (D. Md. 2014) (same); *Prasch v. Bottoms Up Gentlemen's Club, LLC*, Civ. No. 23-cv-00634-LKG, 2024 WL 2977885, at \*6 (D. Md. Jun. 13, 2024) ("[A] plaintiff may be 'entitled to recover liquidated damages under the FLSA or treble damages under the [MWPCL], but not both.'" (citation omitted)); *Quiroz v. Wilhelm Com. Builders, Inc.*, Civ. No. WGC–10–2016, 2011 WL 5826677, at \*3 (D. Md. Nov. 11, 2011) (same).

With this overview in mind, we turn to the factual and procedural history of this case.

## II.

## BACKGROUND

The Company is a small concrete construction company that serves the private industry and public works in Maryland. Kyrone and his sister, Subrena, have owned the company since 2016. Kyrone serves as the Company's president and holds a 49% interest in it, while Subrena is the 51% owner and acts as its vice president. Typically, the Company employs about six to eight employees at any given time.

13

In December 2019, the Employees filed a complaint against the Company, Kyrone, and Subrena ("Defendants" or "Appellees").[5] The complaint alleged three counts: (1) violation of the FLSA; (2) violation of the MWHL; and (3) violation of the MWPCL.

The Employees, who had been with the Company for many years, limited their claims to those within the three-year statute of limitations.[6] Therefore, the relevant period for their overtime wage disputes was from December 2016 to December 2019. The Employees alleged that the Defendants paid them for up to forty hours per week but improperly paid them for overtime hours worked in cash, at just the regular rate. They claimed that this practice was intended to conceal the Defendants' failure to pay overtime as required by law.

In each count, the Employees sought to hold Kyrone and Subrena personally liable, as they were "employers" under the wage laws. The Employees further alleged that the failure to pay the required overtime wages was not a result of any bona fide dispute. Accordingly, they sought treble damages under the MWPCL. They also sought liquidated damages under the FLSA and MWHL. In addition, the Employees sought attorneys' fees and costs under the three statutes.

---

[5] In an amended complaint, the Employees added Patricia Ann Bryant as an individual defendant. The court granted summary judgment in her favor, and the ruling is not at issue in this appeal.

[6] The FLSA and Maryland wage statutes have different limitations periods. The statute of limitations for FLSA claims is two years, extended to three years in cases arising out of a "willful violation." 29 U.S.C. § 255(a). The MWHL and MWPCL use Maryland's general three-year statute of limitations. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-101.

## A.

## Relevant Trial Testimony

A multi-day jury trial began on April 10, 2023. Subrena and Kyrone testified about their roles within the Company, which they ran together. They conferred daily regarding contract proposals, invoices, and bill payments. The Company maintained a policy against overtime work beyond an eight-hour workday due to the physically demanding nature of the labor.

Subrena and Kyrone divided their management responsibilities. Kyrone, who had previously worked as a laborer and foreman for the Company, "r[an] the field," referring to the job sites, during the relevant period. Kyrone's duties were "basically management and supervision." In addition, he handled tasks such as procuring contracts and estimating costs of jobs.

Additionally, Kyrone was responsible for hiring candidates, including the Employees. He negotiated their rates of pay, controlled their work schedules, determined their pay methods, and supervised the conditions of their employment. He had the authority to fire employees, which he exercised.

While Kyrone managed the field operations, Subrena "r[an] the office." She was responsible for handling payroll for the Company and maintaining personnel and payroll records for the Employees. Although Kyrone decided whether to hire new employees, both he and Subrena collaborated during the "hiring process," during which Subrena would set up new employees in the payroll system with the pay rates that Kyrone provided:

15

[EMPLOYEES' COUNSEL]: Is your sister Subrena Bryant involved in the hiring process at Bryant Concrete?

[KYRONE]: Well, yes, once I do my part I have to transfer it to her, so we work together with it. Once I provide her with the paperwork she has to forward it to the payroll services with all the documents to make sure everything is like it should be and all the paperwork is adequate and good.

Subrena acknowledged that she had the power and authority to hire, fire, set the pay, and set the schedule:

[EMPLOYEES' COUNSEL]: [S]ince you became owner and the Vice President, you have had the authority or power to control aspects of . . . the company's employees, employment, correct?

[SUBRENA]: Correct.

[EMPLOYEES' COUNSEL]: And that includes the power to hire and fire employees, correct?

[SUBRENA]: Yes.

[EMPLOYEES' COUNSEL]: [I]t includes the authority or power to supervise and control schedules or conditions of employment?

[SUBRENA]: Yes.

[EMPLOYEES' COUNSEL]: And it includes the power to set their rates of pay?

[SUBRENA]: Yes.

She stated that although she possessed these powers, she did not exercise them because she was "not in the field, [she] can't put a price on a concrete position versus a laborer, [Kyrone] does all of that." Subrena confirmed that she was "[n]ot at all" involved in the hiring decisions, did not control the Employees' schedules, did not supervise them or control the conditions of their employment, and did not determine their hourly rates or payment methods. In addition, she never fired or disciplined the Employees. Her

16

interactions with the Employees were limited; she interacted with only one employee, to whom she would give paychecks to pass on to the foreman for distribution.

According to Kyrone, the Employees worked five or fewer days per week. Kyrone or the foreman would call Subrena from the field and tell her the hours the Employees worked. She would make a journal entry in the payroll program, the payroll service would issue the checks, and Subrena would pay the Employees biweekly.

The payroll system records did not reflect the actual numbers worked on any given day or week, but merely reflected the total number of hours for a biweekly pay stub. After Subrena input the number of hours worked and the payroll "ran," she was not able to differentiate exactly which hours were worked on which day.

If there was an issue with pay, Subrena expected the Employee to bring the problem to either her or Kyrone. There were four pay stubs in the records that indicated more than 40 hours were worked per week, but neither Kyrone nor Subrena was aware of this until the Employees filed a lawsuit against them. They testified that had the Employees brought the issue to their attention, they would have compensated them appropriately.

The Employees provided testimony regarding their working hours, responsibilities, and overtime. The specifics of their roles, hourly rates, and overtime hours are not relevant to this appeal. It is sufficient to note that the Employees testified they averaged at least 45 hours of work per week, with one employee working significantly more overtime. They claimed that they were not paid at the overtime rate for the times they worked beyond 40 hours a week.

17

## B.

## Motion for Judgment

Following the Employees' case, the Defendants requested a judgment as to Subrena's personal liability, contending that she did not qualify as an "employer" under the wage laws. After consideration, the court ultimately granted the motion, explaining that, when viewing the evidence in the most favorable light to the Employees, the Employees failed to establish that Subrena was an employer.

## C.

## Verdict

At the end of the parties' presentations of the case, the court instructed the jury on its ability to award treble damages under the MWPCL:

> An employer who fails to pay an employee wages which are due and owing is liable to the employee for the unpaid wages.

> If the failure to pay wages was not the result of a bona fide dispute, you may also award, in addition to the unpaid wages, up to two times the amount of the unpaid wages that were not the subject of a bona fide dispute.

*See* MPJI-CV 22:3.

> The court instructed the jury on a "bona fide dispute":

> If you find in favor of the [Employees] on their claims, you must determine whether [the Company's and Kyrone's] failure to pay the [Employees] all or part of their wages was not the result of a good faith dispute. Put it another way, did [the Company and Kyrone] have a good faith basis for not paying the [Employees].

> A bona fide dispute is a legitimate dispute over the validity of a claim or the amount that is owing or the employer has a good faith basis for refusing an employee's claim for unpaid wages. If you find that the withholding of all or part of the [Employees'] wages was not the result of a good faith dispute,

18

you may award an additional amount of up to twice the amount of the wage that was not the result of a good faith dispute.

The verdict sheet included questions regarding whether the Company failed to pay each Employee for the work they performed during the relevant period. If the answer was "yes," the sheet then asked the jury to specify the amount of damages owed for unpaid wages to each Employee. Additionally, the jury had to determine whether the Company had a "good faith basis for not paying" the Employee the full wages due. If the answer to this question was "no," the verdict sheet instructed the jury to decide on any additional damages to award the Employee, which were limited to twice the amount already awarded. The sheet also asked whether Kyrone was "personally liable for the wages owed" to the Employees.

The jury reached a verdict in favor of the Employees and against the Company and awarded each Employee as follows: $2,992.50 to Mr. Morales; $3,225.38 to Mr. Perez Rodriguez; $7,129.50 to Mr. Perez; and $561.00 to Mr. Dominguez. In addition, the jury determined that the Company had a good faith basis for not paying all wages owed to each Employee, so no additional damages were awarded under the MWPCL. The jury also found that Kyrone was not personally liable.

## D.

### Employees' Post-Trial Motion for Liquidated Damages

The Employees filed a post-trial motion for liquidated damages under the FLSA and MWHL in amounts equal to the wages the jury awarded each employee. They contended

19

that the liquidated damages were mandatory unless the employer establishes the good faith defense, a showing on which the employer bore the burden of proof.

Ultimately, the court found the Company's action in failing to pay the Employees' wages was in good faith and based on reasonable grounds, based on the evidence adduced at trial. Accordingly, it denied the request for liquidated damages under the FLSA and MWHL.

**E.**

**Employees' Motion for Attorneys' Fees and Costs**

The Employees moved for an award of attorneys' fees and costs. They sought to recover $167,509.03 in fees and $5,952.50 in costs, totaling $173,461.53. After a hearing, the court took the matter under advisement and issued an opinion and order that awarded the Employees $12,891.95 in attorneys' fees.

The Employees noted a timely appeal.[7] We provide additional facts as they become relevant to the discussion of the issues.

---

[7] The Employees noted two appeals, one for the entry of judgment on the verdict (ACM-REG-0488-2023) and another for the entry of judgment related to the award of attorneys' fees (ACM-REG-0549-2024). This Court consolidated the appeals. Thereafter, we *sua sponte* ordered a remand to the circuit court because of the absence of a final judgment; separate documents and docket entries were not entered as to Subrena and Kyrone as required by Maryland Rule 2-601(a)(1) and (b)(2). We stayed the consolidated appeal for the court to enter a final judgment.

The court entered the final judgment, and the Employees appealed for a third time (ACM-REG-0877-2025). However, they did not timely appeal. The Appellees moved to dismiss all noted appeals. By order dated July 25, 2025, we dismissed the third noted appeal as untimely, but we deemed the consolidated appeal as timely pursuant to Maryland Rule

A.

**Subrena's "Employer" Status**

The Employees argue that the circuit court erred by granting judgment in favor of Subrena. They contend that Subrena held "employer" status under the wage laws.

### 1. "Employer" Under Federal and Maryland Wage Laws

The FLSA, MWHL, and MWPCL allow an employee to bring an action against his or her "employer," which includes not just entities but also individuals who may be personally liable for violations under these statutes. "Each of the assorted wage and hour statutes contains a vague definition for the term employer."[8] *Qun Lin*, 247 Md. App. at 632. In the context of these statutes, "the term is not limited by the common law concept of "employer," and is to be given an expansive interpretation in order to effectuate the FLSA's broad remedial purposes." *Newell*, 407 Md. at 649–50 (citation modified). "Accordingly, an employee may have more than one employer at a given time." *Id.* at 650.

---

8-602(f). We lifted the stay imposed and ordered that the consolidated appeal be decided on the parties' previously submitted briefs.

[8] *See* FLSA, 29 U.S.C. § 203(d) ("'Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency . . . ."); MWHL, LE § 3-401(b) ("'Employer' includes a person who acts directly or indirectly in the interest of another employer with an employee."); MWPCL, LE § 3-501(b) ("'Employer' includes any person who employs an individual in the State or a successor of the person.").

To determine whether an individual qualifies as an employer, both Maryland and federal courts apply the "economic reality test." *Qun Lin*, 247 Md. App. at 634. The economic reality test examines "four factors to determine an individual's level of 'control' over an employee." *Pinnacle Grp., LLC v. Kelly*, 235 Md. App. 436, 472–73 (2018). The factors are "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Campusano v. Lusitano Const., LLC*, 208 Md. App. 29, 39–40 (2012) (quoting *Newell*, 407 Md. at 651). "The factors are 'not to be applied mechanistically, and their general purpose must be understood as ultimately assigning *responsibility* under the law.'" *Pinnacle Grp.*, 235 Md. App. at 473 (emphasis in original) (citation omitted).

The four-factor analysis of control focuses "on the role played by the corporate officers in *causing* the corporation to undercompensate employees and to prefer the payment of other obligations and/or the retention of profits." *Campusano*, 208 Md. App. at 40 (emphasis in original). Other relevant indicia may also exist, such as "an individual's operational control over significant aspects of the business and an individual's ownership interest in the business[.]" *Id.* However, being the sole owner of a company does not, in and of itself, subject one to personal liability. Instead, "it is the totality of the circumstances, and not any one factor, which determines whether a worker is the employee of a particular alleged employer." *Pinnacle Grp.*, 235 Md. at 474; *see also Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 966 (6th Cir. 1991) ("To be classified as an employer, it is not required that a party have exclusive control of a corporation's day-to-day functions. The party need

22

only have operational control of *significant aspects* of the corporation's day to day functions." (emphasis in original) (citation modified)).

### 2. The Circuit Court's Ruling on the Motion for Judgment

In granting judgment in favor of Subrena, the circuit court explained:

[I]t seems to me that the testimony was very consistent from [the Employees] as well as from the Bryants that [Subrena's] role was really a back office role, whatever involvement she had in any of these issues, the four or five issues that determined whether there was control was really tangential. One might argue that she maintained the employment records simply because she was the one transmitting the weekly time to [the payroll service] and would get the checks and give them to either . . . [Kyrone] or to the foreman to give to the employees. But unless there is more, that is probably not enough to satisfy the test.

\* \* \*

In evaluating this particular issue, the [c]ourt looks at . . . the evidence presented in a light most favorable to the non-moving party, here the [Employees]. And the [c]ourt looks at the evidence presented, plus any reasonable inferences from that evidence. Applying that level of scrutiny, it appears to me that from the evidence that there was a clear division of authority within this small two-person company. And on one side it is absolutely true that [Subrena] held the majority shareholder, if one can put it that way insofar as she is 51 percent of the company and [Kyrone] has 49 percent. However, in looking at the totality of the circumstances, none of the evidence satisfies the test under any of the cases that have been cited and argued here in terms of control over what was—control over the various factors, whether the hiring or firing, the setting of salaries, the authorization of overtime. [Subrena] was, by her own testimony, a back office worker. Any involvement she had at all in the pay to the employees here was tangential and not controlling.

So in any of the issues, hiring, firing, control, supervision of the work, establishing the rate or method of pay, she had no involvement and I find based on the evidence presented that I will grant the Defendants' motion for judgment as to Subrena Bryant for those reasons.

23

### 3. Analysis

The Employees disagree with the court's ruling, asserting that the evidence demonstrated satisfaction of all four factors of the economic reality test. In contrast, the Appellees argue that the court properly granted judgment in favor of Subrena as the evidence showed that, despite her ownership interest and authority over the Employees' employment, she did not actually exercise any control over the Employees. Even if the court erred, they contend that the error was harmless.

### a. Standard of Review

Maryland Rule 2-519(a) states that "[a] party may move for judgment on any or all of the issues in any action at the close of the evidence offered by an opposing party, and in a jury trial at the close of all the evidence." "[W]hen a defendant moves for judgment based on . . . the legal insufficiency of the plaintiff's evidence, the trial judge must determine if there is any evidence, no matter how slight, that is legally sufficient to generate a jury question[.]" *Thomas v. Panco Mgmt. of Md., LLC*, 423 Md. 387, 394 (2011) (citation modified). "The court considers the evidence and reasonable inferences drawn from the evidence in the light most favorable to the non-moving party." *Sugarman v. Liles*, 460 Md. 396, 413 (2018). "It is only when the facts and circumstances only permit one inference with regard to the issue presented, that the issue is one of law for the court and not one of fact for the jury." *Thomas*, 423 Md. at 394 (citation modified).

Whether the trial judge applied the correct standard of proof in granting a defendant's motion for judgment is a question of law that we review *de novo. Lowery v. Smithsburg Emergency Med. Serv.*, 173 Md. App. 662, 682–83 (2007). We assume the truth

24

of all credible evidence on the issue and any inferences therefrom in the light most favorable to the non-moving parties, here, the Employees. *Tate v. Bd. Educ. Prince George's Cnty.*, 155 Md. App. 536, 544 (2004). "Consequently, if there is any evidence, no matter how slight, that is legally sufficient to generate a jury question, the case must be submitted to the jury for its consideration." *Id.* at 545.

### b. The Court Erred in Granting Judgment in Favor of Subrena.

We conclude that the court erred in granting judgment in favor of Subrena on the basis that there was no evidence upon which a jury could find that she was an "employer." The evidence established that Subrena was a 51% owner and vice president of the Company. While ownership alone is not enough to classify an individual as an "employer," there was evidence indicating that Subrena's involvement extended beyond merely being the majority owner. She testified that she "r[an] the office" while Kyrone "r[an] the field." She stated that she had the authority to hire and fire employees, set their pay rates, and establish conditions of employment. She participated in the hiring process by setting up payroll for new employees and managed payroll for the Company. Furthermore, she was responsible for entering the Employees' hours daily and distributing paychecks. She also maintained the Employees' employment records, including personnel and payroll records. Based on all this, there was legally sufficient evidence to generate a jury question that some factors of the economic reality test were met, upon which the jury could have concluded that Subrena was an employer based on the totality of the circumstances.

Instead of considering the evidence and reasonable inferences drawn from the evidence in the light most favorable to the Employees, the non-moving parties, the court

25

gave Subrena the benefit of favorable inferences regarding her "employer" status. Despite testimony that Subrena "r[an] the office," the court downplayed her role in the Company's daily operations, referring to her as a "back office worker." It dismissed her ownership stake in the Company and testimony that she had the power to hire and fire employees and set their pay rate and schedules, among other powers. The court also minimized the evidence concerning the fourth factor of the economic reality test, which pertained to Subrena's maintenance of employment records. In giving Subrena the benefit of favorable inferences, the court explained that "[o]ne might argue that [she] maintained the employment records simply because she was the one transmitting the weekly time to [the payroll service] and would get the checks and give them to either . . . [Kyrone] or to the foreman to give to the employees."

In concluding that there was no evidence to support the factors of the economic reality test, the court emphasized that Subrena did not actually exercise the power to hire and fire employees, she did not supervise and control work schedules or conditions of employment, and she did not determine the rate and method of payment. Although Subrena did not exercise these powers, this does not preclude a finding that she was an employer. Indeed, "[t]he first factor focuses on who has the *capacity* to hire or fire someone." *Pinnacle Grp.*, 235 Md. App. at 474 (rejecting argument that the owner of a company, who had the power to hire and fire, was not an "employer" because he did not "actually *exercise* that power").

The Appellees cite *Roley v. National Professional Exchange, Inc.*, 474 F. Supp. 3d 708 (D. Md. 2020), to support their contention that the court did not err in granting

26

judgment in favor of Subrena. However, their reliance on this case is unavailing. There, an employee was temporarily assigned to work for a third party through a Maryland corporation. *Id*. at 713. The court found that the corporation was an employer because the corporation ultimately was responsible for the employee's payment, rather than the third-party. *Id.* at 719. However, the court declined to find that one of the Maryland corporation's managing directors was individually liable as an employer under the economic reality test. *Id.* at 723. The managing director had no power to hire and fire the employee but had to seek the approval of both the corporation's board and the third party. *Id.* Furthermore, the managing director did not supervise the employee and exercised little to no control over his work, which was instead directed, evaluated, and set by the third party. *Id.* The third party also determined the rate and manner of pay, rather than the managing director or even the corporation. *Id.* at 723–24. Only the fourth factor, the maintenance of employment records, slightly favored the managing director's individual liability. *Id.* at 724. Accordingly, the trial court granted summary judgment in favor of the managing director. *See id.* at 725.

Unlike the managing director in *Roley*, Subrena was an owner of the Company who had the authority to hire and fire employees, manage payroll, and maintain Employees' employment records, including personnel and payroll files. For the reasons stated, the court erred in granting judgment in favor of Subrena.

### c. The Error Was Not Harmless.

The Appellees argue that even if the court erred in granting judgment in Subrena's favor, the error was harmless. They contend that any error was not prejudicial and did not

27

affect the essential fairness of the trial. They claim that since the jury found Kyrone not personally liable, there was no possibility that the jury would have found Subrena liable had the court denied the motion for judgment.

The Employees contend that the error was prejudicial. They assert that when the court granted judgment in favor of Subrena, the jury followed suit by finding Kyrone not liable. They claim that by granting judgment in favor of Subrena, the court created a situation in which neither decisionmaker of the Company could be personally liable.

Our appellate courts will not reverse a lower court's judgment if the error is harmless. *Flores v. Bell*, 398 Md. 27, 33 (2007). Generally, "[t]he party complaining that an error has occurred has the burden of showing prejudicial error." *Shealer v. Straka*, 459 Md. 68, 102 (2018). "Prejudice will be found if a showing is made that the error was likely to have affected the verdict below." *Crane v. Dunn*, 382 Md. 83, 91 (2004). "It is not the possibility, but the probability, of prejudice which is the object of the appellate inquiry." *Id.* Ultimately, we determine prejudice "based on the facts of each individual case." *Barksdale v. Wilkowsky*, 419 Md. 649, 662 (2011).

The difficulty here is that we cannot "unbake" the jury verdict and examine whether the jury's decision would have been different if Subrena remained a party to the case and was included on the verdict sheet. *See id.* at 665. "When prejudice is not readily apparent, a reviewing court must focus on the context and magnitude of the error." *Id.* "[T]he mere uncertainty as to prejudice may be grounds for holding an error is reversible." *Id.* at 667. Here, the court's error affected the Employees' right to have a jury decide the case, and it undermined the outcome of the proceeding by precluding the jury from considering

28

Subrena's personal liability. Given the context and magnitude of the error, we are persuaded that the court's grant of judgment in Subrena's favor probably affected the outcome of the case and was not harmless. *Cf. Shealer*, 459 Md. at 105–06 (concluding that the orphans' court error in refusing to transmit unresolved factual issues to a court of law was not harmless; the obligation to transmit issues was a significant obligation; and the error denied caveator's right to have issues tried by a jury); *Discovery Operating, Inc. v. BP Am. Prod. Co.*, 311 S.W. 3d 140, 165 (Tex. App. 2010) (holding that trial court's grant of summary judgment on issue of negligence was harmful error; "While there is no way to know how the jury would have answered a question submitting [plaintiff's] negligence per se claims, the jury might have answered the negligence question in [plaintiff's] favor had the trial court given it the opportunity to consider the negligence per se claims.").

For the reasons stated, we vacate the judgment entered in Subrena's favor. As a result, we must vacate the judgment entered on the verdict. Because the court's decision on liquidated damages was based on the evidence presented at trial, and the award of attorneys' fees was partially dependent on the trial outcomes, we also vacate those judgments. We remand the case for further proceedings, including a new trial.

### B.

### Liquidated Damages

We address the second question presented for guidance on remand.

The Employees argue that the court erred in denying their post-trial request for liquidated damages under the FLSA and MWHL for two reasons. First, they contend that the good faith defense related to liquidated damages is an affirmative defense, which the

29

Appellees failed to include in their answer to the complaint and thereby waived. Second, the Employees argue that even if the Appellees did not waive the defense, they failed to meet their burden of showing that they acted in good faith and reasonably believed that the wages paid were not in violation of the law.

### 1. Affirmative Defense

An affirmative defense is one which directly or implicitly concedes the basic position of the opposing party, but which asserts that, notwithstanding that concession, the opponent is not entitled to prevail because he is precluded for some other reason. *Armstrong v. Johnson Motor Lines, Inc.*, 12 Md. App. 492, 500 (1971). Good faith in the context of liquidated damages under the FLSA is an affirmative defense. *Chavez-Deremer v. Med. Staffing Am., LLC*, 147 F.4th 371, 389 (4th Cir. 2025). Based on the parallels and textual similarities of the FLSA and the MWHL, we conclude that the good faith defense under the MWHL is an affirmative defense, as it is under the FLSA. If successful, such a defense under the MWHL would entirely defeat an employee's claim for liquidated damages.

The question becomes whether this good faith defense must be specifically pled in an answer under Maryland law. The Employees contend that under Maryland Rule 2-323(g), the good faith defense must be pled in the answer or is otherwise waived. We disagree.

Rule 2-323(a) provides that "[e]very defense of law or fact to a claim for relief in a complaint . . . shall be asserted in an answer, except as provided by Rule 2-322." Section (g) of the same Rule enumerates an exhaustive list of required affirmative defenses that must be separately pled in the answer:

Whether proceeding under section (c) or section (d) of this Rule, a party *shall* set forth by separate defenses: (1) accord and satisfaction, (2) merger of a claim by arbitration into an award, (3) assumption of risk, (4) collateral estoppel as a defense to a claim, (5) contributory negligence, (6) duress, (7) estoppel, (8) fraud, (9) illegality, (10) laches, (11) payment, (12) release, (13) res judicata, (14) statute of frauds, (15) statute of limitations, (16) ultra vires, (17) usury, (18) waiver, (19) privilege, and (20) total or partial charitable immunity.

Md. Rule 2-323(g) (emphasis added). Failure to include an enumerated affirmative defense in the answer constitutes a waiver of that defense. *See, e.g.*, *Campbell v. Lake Hallowell Homeowners Ass'n*, 157 Md. App. 504, 527 (2004) (holding that failure to plead the defense of collateral estoppel barred defendant from relying on the defense to obtain judgment in its favor); *Gooch v. Md. Mech. Sys., Inc.*, 81 Md. App. 376, 383 (1990) (holding that the defendants waived the affirmative defense of privilege by failing to plead this defense specifically in their answer).

Section (g) also provides that a defendant "may" include by separate defense any other matter constituting an affirmative defense:

In addition, a party *may* include by separate defense any other matter constituting an avoidance or *affirmative defense* on legal or equitable grounds. When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court shall treat the pleading as if there had been a proper designation, if justice so requires.

Md. Rule 2-323(g) (emphasis added). In other words, section (g) of Rule 2-323 allows for, but does not require, a separate pleading for defenses not specifically enumerated under the Rule. *See Ben Lewis Plumbing, Heating, & Air Conditioning, Inc. v. Liberty Mut. Ins.*, 354 Md. 452, 464–65 (1999); *Fearnow v. Chesapeake & Potomac Tel. Co. of Md.*, 104 Md. App. 1, 46–47 (1995), *aff'd in part, rev'd in part*, 342 Md. 363 (1996) (concluding that

defense of scope of employment was not waived when not pled in the answer because it was not one enumerated under Md. Rule 2-323(g)).[9]

The good faith defense is not enumerated under Rule 2-323(g). Moreover, neither the FSLA nor MWHL requires that this defense be specifically pled in an answer. Therefore, the Appellees were permitted, but were not required, to plead the affirmative defense of good faith separately. Their failure to do so does not constitute waiver of the defense.[10]

---

[9] The Supreme Court of Maryland recognized that section (a) of Rule 2-323 "emit[s] a contradictory signal" recognized by legal commentators. *Ben Lewis*, 354 Md. at 466. "Good pleading mandates that all known defenses be stated, even though [Rule 2-323(g)] specifies that only the listed defenses must be raised." P.V. Niemeyer & L.M. Shuett, *Maryland Rules Commentary* 197 (2d ed. 1992); *see also* J.A. Lynch & R.W. Bourne, *Modern Maryland Civil Practice* § 6.7(c)(4), at 414 (1993) (observing that a construction of Rule 2-323(g) that leaves a defendant free not to plead affirmative defenses that are not mandated by the rule "would foster unfair surprises of a plaintiff as to affirmative defenses not listed"); *Campbell*, 157 Md. App. at 527 (explaining that Rule 2-323 "prevents unfair surprise and enables a plaintiff to concentrate the focus of his discovery" (citation omitted)).

We need not resolve the tension between sections (a) and (g) of Rule 2-323. The Employees make no argument regarding it, nor do they assert that they were unfairly surprised by the Company's invocation of the good faith defense when opposing their post-trial motion for liquidated damages.

[10] Maryland Rule 2-323(g) is derived from Fed. R. Civ. P. 8(c). However, unlike the residual clause under Rule 2-323(g), Fed. R. Civ. P. 8(c) requires that a party plead "any" affirmative defense, regardless of whether it is enumerated in the rule. Fed. R. Civ. P. 8(c) ("In responding to a pleading, a party *must affirmatively state any* avoidance or *affirmative defense*, including [the enumerated list of affirmative defenses]") (emphases added); *see Ben Lewis*, 354 Md. at 465 (explaining that the Rules Committee rejected the "catch-all" phrase in Fed. R. Civ. P. 8(c) as a requirement under Md. Rule 2-323(g)). While we often look to federal cases for guidance when interpreting a Maryland Rule derived from the Federal Rule, the departure under the Maryland Rules regarding this catch-all phrase makes it impractical to rely entirely on federal cases for guidance in resolving whether the good faith defense is waived if an employer fails to plead it under the Maryland Rules.

32

## 2. Good Faith and Reasonable Grounds

As mentioned, the FLSA allows the court discretion to deny or reduce an award of liquidated damages if the employer meets the burden of two requirements for the good faith defense: (1) that the employer acted in good faith, and (2) it had reasonable grounds for believing that its act or omission was not a violation of the applicable law. *See Burnley v. Short*, 730 F.2d 136, 140 (4th Cir. 1984) (explaining that employer bears "plain and substantial burden" of demonstrating good faith defense). Under the MWHL, the employer has the same burden.

"The good faith provision 'exists not just to make employees whole, but also to deter employers from gambling on noncompliance—that is . . . from rolling the dice by underpaying employees, reasoning all the while that it would be no worse off even if the employees eventually prevailed in court." *Chavez-Deremer*, 147 F.4th at 410 (citation modified). The provision "is designed to make such a strategy a losing bet." *Id.* "Though the stakes are high, liquidated damages under the FLSA are not an extraordinary remedy; they are the 'norm' for FLSA overtime compensation violations." *Id.*

"Critically, an employer's 'good faith' and 'reasonable grounds for believing' it had not violated the FLSA are each measured objectively." *Id.* (citations omitted); *see also Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 312 (7th Cir. 1986) ("A good heart but an empty head does not produce a defense; objective criteria are highly valued here as in other inquiries into 'good faith,' not the least because corporations . . . do not have

subjective mental states.").[11] "That means 'an employer may not simply remain blissfully ignorant of FLSA requirements' by taking 'an ostrichlike approach to the Act.'" *Chavez-Deremer*, 147 F.4th at 410 (explaining that "[i]f mere assumption amounted to good faith and reasonable belief of compliance, no employer would have any incentive to educate itself and proactively conform to the FLSA" (citation modified)).

"[G]ood faith under the FLSA demands more than a shrug of the shoulders—that is, more than ignorance of the prevailing law or uncertainty about its development." *Id.* at 411 (citation modified). "An employer invoking good faith must show not only that it tried, but that it took active steps to ascertain the dictates of the FLSA and made a genuine effort to comply with them." *Id.* (citation modified) (citing *Renfro v. City of Emporia*, 948 F.2d 1529, 1540 (10th Cir. 1991) ("The good faith requirement mandates the employer have an honest intention to ascertain and follow the dictates of the [FLSA].")). "One practical— and judicially recognized—way to satisfy the good faith showing is for the employer to prove that it sought out and adhered to legal advice regarding compliance" with the wage statute. *Id.* (explaining that another judicially recognized showing would be the employer's reliance on the Department of Labor's interpretation of the FLSA); *see also Roy*, 141 F.3d

---

[11] While the Fourth and Seventh Circuits use an objective test to evaluate whether employers operated under "good faith" and had "reasonable grounds for believing" that they had not violated the FLSA, we note that other courts have incorporated a subjective element alongside an objective measurement. *See, e.g.*, *Kinney v. District of Columbia*, 994 F.2d 6, 12 (D.C. Cir. 1993) ("Good faith requires only a showing that the employer subjectively acted with an 'honest intention to ascertain what the . . . [FLSA] requires and to act in accordance with it.'" (citation omitted)); *Bratt v. Cnty. of Los Angeles*, 912 F.2d 1066, 1071–72 (9th Cir. 1990) (stating that the good faith and reasonable grounds test includes both subjective and objective components).

at 548–49 (upholding trial court's finding of good faith on part of employer where it relied on its attorney's counsel, even though that counsel was incorrect, and it made "ongoing modification of its compensation structure to accommodate changes in the [FLSA]").

"The good faith defense requires an employer to take serious and informed steps to adhere to the applicable law." *Chavez-Deremer*, 147 F.4th at 412. For that reason, "a brief or incomplete consultation with a lawyer regarding [FLSA] conformity does not satisfy the standards of the good faith defense." *Id.* The statute's "reasonableness standard is in place to prevent such a façade—one which could allow a phone call to a lawyer to justify a good faith defense." *Id.*

Delegating payroll functions to a third-party or a subordinate does not establish good faith to meet the FLSA's requirements. *Chao v. Barbeque Ventures, LLC*, 547 F.3d 938, 942–43 (8th Cir. 2008). Likewise, neither simple conformity with industry-wide practice, nor the absence of employee complaints, is sufficient to meet an employer's burden. *Rogers*, 362 F. Supp. 2d at 638.

"Whether the employer acted in good faith and whether it had objectively reasonable grounds for its action are mixed questions of fact and law." *Flores v. City of San Gabriel*, 824 F.3d 890, 905 (9th Cir. 2016); *see also Dybach v. Fla. Dept. of Corr.*, 942 F.2d 1562, 1566 (11th Cir. 1991); *Chao v. Hotel Oasis, Inc.*, 493 F.3d 26, 35 (1st Cir. 2007). Questions involving the application of legal principles to established facts are reviewed *de novo*. *Flores*, 824 F.3d at 905. Factual findings are reviewed for clear error. *Dybach*, 942 F.2d at 1566. "Once the employer has demonstrated its good faith and reasonable belief, the [trial] court's refusal to award liquidated damages is reviewed for abuse of discretion."

35

*Id.* at 1566; *Pagan-Colon v. Walgreens of San Patricio, Inc.*, 697 F.3d 1, 14 (1st Cir. 2012) (clarifying that while a trial court's decision to deny liquidated damages is reviewed for abuse of discretion, the trial court's factual findings related to good faith and reasonableness are reviewed for clear error); *Chavez-Deremer*, 147 F.4th at 410 ("Because a *decision to reduce or deny a liquidated damages award* rests in the [trial] court's discretion, our review is limited to assessing whether such discretion has been abused." (emphasis added)).

Given the disposition of the case as explained in Part A *supra*, we refrain from evaluating the court's conclusion that the Company demonstrated a good faith defense under the FLSA and MWHL. If the request for liquidated damages arises again on remand, the court should take into account the principles outlined above.[12]

---

[12] We note, however, that the court's conclusion about the good faith defense was based on a factual finding that was not supported by competent material evidence. *See Anderson v. Joseph*, 200 Md. App. 240, 249 (2011) ("A factual finding is clearly erroneous if there is no competent and material evidence in the record to support it."). In denying the Employees' request for liquidated damages under the FSLA and MWHL, the court concluded that the Company's failure to pay the required overtime compensation was in good faith and based on reasonable grounds. Relying on the trial testimony, the court made a factual finding that the Employees "generally did not work overtime but *on those limited occasions when they did, they were fully paid for the overtime worked.*" (emphasis added). In a footnote in its memorandum opinion, the court found that Kyrone "testified that there were two isolated incidents where the [E]mployees worked overtime and were not paid for such overtime. *When the unpaid overtime was brought to the attention of the employer, the overtime was paid in full both times.* The court does not find these two incidents to be evidence of bad faith." (emphasis added).

However, there was no evidence that the Employees were fully paid for the overtime worked on these limited occasions. To the contrary, Kyrone and Subrena testified that neither of them "caught" that the Employees worked overtime, and the Employees were

**JUDGMENT IN FAVOR OF SUBRENA BRYANT, JUDGMENT ON THE VERDICT, JUDGMENT DENYING LIQUIDATED DAMAGES, AND JUDGMENT GRANTING ATTORNEYS' FEES VACATED. CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE COUNTY TO CONDUCT FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. APPELLEES TO PAY COSTS.**

---

not paid for that time at the overtime rate. Kyrone and Subrena discovered the problem only when the Employees filed a lawsuit against them. Thereafter, the Company offered to pay the overtime, but neither Kyrone nor Subrena testified that the Employees accepted the payment or that such payment was actually made.